UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HASHMAT FAIZI, | Case No.:  25-cv-02974-JO-MSB |
| Petitioner, | |
| v. | **ORDER GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS** |
| CHRISTOPHER J. LAROSE, et al., | |
| Respondents. | |

Petitioner Hashmat Faizi filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the lawfulness of his civil immigration detention. Dkt. 1 ("Pet."). He argued that his nearly eleven-month detention without a bond hearing violates the Fifth Amendment Due Process Clause. *See id.* at 15.  The Court held oral argument on the petition on November 13, 2025. Dkt. 10.  For the reasons stated below, the Court granted the habeas petition as to Petitioner's due process claim and ordered a bond hearing before an immigration judge.  *Id.*  The Court took under submission the question of whether further relief was warranted.  *Id.*

1

# I. FACTUAL BACKGROUND

Petitioner fled ethnic and religious persecution by the Taliban in his home country of Afghanistan and came to the United States to seek asylum.  Dkt. 7 ("Faizi Decl.") ¶¶ 3–17.  On December 26, 2024, Petitioner entered the United States without inspection and was immediately detained by the Department of Homeland Security ("DHS").  *Id.* ¶ 2.  DHS deemed Petitioner inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and placed him in expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1).  *Id.* ¶ 17; Dkt. 6 ("Gov't Opp.") at 2:14–16.  On January 30, 2025, an asylum officer determined that Petitioner had established a credible fear of facing persecution if returned to Afghanistan.  Faizi Decl. ¶ 18.  As a result of that determination, DHS placed Petitioner into standard removal proceedings under § 240 of the Immigration and Nationality Act ("INA") while continuing to detain him during the pendency of those proceedings.  Dkt. 6-1 at 2; *see* 8 U.S.C. § 1229a; 8 C.F.R. § 208.30.

On February 27, 2025, Petitioner filed his application for asylum.  Faizi Decl. ¶ 22. He appeared for a master calendar hearing on March 5, 2025, at which time the immigration judge scheduled an individual merits hearing for July 10, 2025. Dkt. 6-1 at 12.  The merits hearing was subsequently continued multiple times.  On June 25, 2025, the immigration court continued the hearing to August 26, 2025, and reassigned Petitioner's case to a different immigration judge.  Faizi Decl. ¶¶ 24–25.  On August 26, 2025, the hearing was further rescheduled to September 4, 2025, due to a personal matter affecting the immigration judge.  *Id.* ¶ 25; Gov't Opp. at 3:18–19.  When the hearing finally commenced on September 4, 2025, it was cut short due to docket constraints and continued to December 19, 2025.  Faizi Decl. ¶ 25.  Throughout this period, Petitioner remained in custody without a bond hearing.

On November 2, 2025, after nearly eleven months in custody at the Otay Mesa Detention Center, Petitioner filed a petition for writ of habeas corpus challenging his continued detention without a bond hearing as a violation of the Fifth Amendment Due Process Clause.  Pet.

25-cv-02974-JO-MSB

## II.  LEGAL STANDARD

Under the Constitution, "every individual detained within the United States" has the right to demand judicial review of unlawful detention through the writ of habeas corpus. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).  Federal district courts possess broad authority to grant habeas relief to any individual "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  By authorizing courts to safeguard an individual's fundamental right to liberty, the writ of habeas corpus has historically served as one of the judiciary's strongest checks on illegal government custody and the executive's power to impose civil detention without trial.  *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).

## III.  JURISDICTION

The Court begins by determining whether it has jurisdiction to review Petitioner's constitutional challenge to his detention.  Respondents rely on two provisions of the INA— 8 U.S.C. §§ 1252(b)(9) and (g)—to challenge the Court's jurisdiction.  Gov't Opp. at 5–6. Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States" shall be consolidated into review of a final order of removal.  The Supreme Court has explained that this provision "channels" to the courts of appeals "decisions and actions leading up to or consequent upon final orders of deportation."  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483, 485 (1999).  Section 1252(g) further bars judicial review of claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders."

While these jurisdictional bars are framed in expansive terms, they are not all-encompassing.  Section 1252(b)(9) does not foreclose review of "claims that are independent of or collateral to the removal process."  *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016).  Challenges to the legality of a noncitizen's detention during the pendency of removal proceedings fall squarely within this category.  Because such claims

25-cv-02974-JO-MSB

do not contest the merits of removal proceedings, they are too remote from the removal action to fall under § 1252(b)(9)'s purview. *See Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (plurality opinion) (cautioning that an expansive interpretation of § 1252(b)(9) would render claims of prolonged detention effectively unreviewable); *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (citing *Jennings*, 583 U.S. at 294–95) (explaining that § 1252(b)(9) does not bar suits that do not seek review of a removal order, the executive's decision to seek removal, or the process for determining removability).

Section 1252(g) likewise does not bar collateral challenges to the legality or constitutionality of detention. The Supreme Court has made clear that § 1252(g) is a narrow provision, limited to the three discrete actions enumerated in the statute: *commencing* proceedings, *adjudicating* cases, and *executing* removal orders. *See Reno*, 525 U.S. at 482; *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (noting the Supreme Court's "narrow reading" of § 1252(g)). Despite Respondents' argument to the contrary, § 1252(g) does not operate as a "general jurisdictional limitation" encompassing every eventuality that could be said to "arise from" those actions. *Reno*, 525 U.S. at 482; *Jennings*, 583 U.S. at 294 (noting that § 1252(g) does not "sweep in" all claims arising from the three actions). It protects the Attorney General's ability to exercise "prosecutorial discretion" in these three enumerated areas, but it does not bar courts from resolving "'purely legal question[s]' that 'do[] not challenge the Attorney General's discretionary authority.'" *Ibarra-Perez*, 154 F.4th at 996 (quoting *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004)). Nor does it bar due process claims, such as "collateral challenges to unconstitutional practices and policies used by [an] agency." *Id.* at 998 (citing *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998)).

Here, Petitioner's claims are collateral challenges to the constitutionality of his prolonged detention without a bond hearing. He does not seek review of the government's decision to commence removal proceedings, adjudicate his removability, or execute a removal order. Nor does he challenge the merits of those proceedings. Instead, he

25-cv-02974-JO-MSB

challenges the legality of his continued detention while these proceedings are ongoing and seeks to vindicate his constitutional due process rights—claims wholly "independent of or collateral to" the merits of his asylum claim and the Attorney General's discretionary decision to pursue this removal action against him. *See J.E.F.M.*, 837 F.3d at 1032; *see also Gao v. LaRose*, 805 F. Supp. 3d 1106, 1108–09 (S.D. Cal. 2025) (finding a similar challenge to unlawful detention not barred by §§ 1252(b)(9) or (g)); *Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *1073 (S.D. Cal. Sept. 3, 2025) (finding a similar challenge to unlawful detention under § 1226(a)'s detention provision not barred by § 1252(b)(9)). Because Petitioner's unlawful detention claims fall outside § 1252's jurisdictional bars, the Court has jurisdiction to review this habeas petition.

## IV.  DISCUSSION

Petitioner challenges his nearly eleven-month detention without a bond hearing as a violation of the Due Process Clause. Although he concedes that he is subject to § 1225(b)(1) of the INA, which mandates detention during the pendency of removal proceedings, he argues that the Constitution nevertheless entitles him to an individualized bond hearing. *See* Dkt. 8 at 2–6. The Court must therefore determine whether Petitioner's prolonged detention without a bond hearing violates the Fifth Amendment's prohibition on arbitrary deprivations of liberty.

**A. The Due Process Clause Limits the Duration of Mandatory Immigration Detention**

Supreme Court jurisprudence makes clear that prolonged immigration detention without a bond hearing raises serious constitutional concerns. In *Zadvydas*, the Supreme Court addressed a challenge to 8 U.S.C. § 1231(a)(6), which appeared to authorize the indefinite detention of noncitizens subject to final removal orders. 533 U.S. at 682. The Court held that interpreting the statute to "permit[] indefinite detention . . . would raise a serious constitutional problem" because "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Id.* at 690. To avoid that constitutional

concern, the Court construed the statute to contain "an implicit '[presumptively] reasonable time' limitation" of six months. *Id.* at 682, 701.

Subsequent Supreme Court cases have declined to impose specific time limits on immigration statutes that mandate detention but have upheld the *Zadvydas* principle that the Constitution imposes limits on indefinite detention without a bond hearing. *Demore v. Kim*, 538 U.S. 510 (2003), involved a due process challenge to § 1226(c), which mandates detention during removal proceedings for noncitizens convicted of certain crimes. In *Demore*, the Supreme Court distinguished *Zadvydas* on the ground that, unlike the "'indefinite' and 'potentially permanent'" detention at issue there, detention under § 1226(c) has an "obvious termination point"—the conclusion of removal proceedings— and typically ranged from forty-seven days to four months. *Id.* at 528–29. Because of the finite and relatively brief duration of § 1226(c) detention, the Court concluded that the statute did not on its face violate the Due Process Clause. *See id.* at 529–31. Justice Kennedy's concurrence underscored, however, that due process may require "an individualized determination as to [a noncitizen's] risk of flight and dangerousness if the continued detention [becomes] unreasonable or unjustified." *Id.* at 532. In *Jennings*, the Supreme Court rejected the Ninth Circuit's conclusion that certain immigration detention statutes that mandate detention implicitly required bond hearings after six months. 583 U.S. at 286. In doing so, however, the Court left open the underlying questions of whether the Due Process Clause independently imposes limits on prolonged detention without a bond hearing, and when those limits are exceeded. *See id.*; *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018).

Consistent with these Supreme Court cases, the Ninth Circuit has repeatedly recognized that statutes authorizing prolonged immigration detention without a bond hearing raise "serious constitutional concerns." *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 944, 950 (9th Cir. 2008), *abrogated on other grounds by Jennings*, 583 U.S. 281 (finding that "prolonged detention [under § 1226(a)] must be accompanied by . . . a hearing to establish whether releasing the alien would pose a danger to the community or

25-cv-02974-JO-MSB

a flight risk"); *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1084 (9th Cir. 2011) ("We hold that individuals detained under § 1231(a)(6) are entitled to the same procedural safeguards against prolonged detention as individuals detained under § 1226(a)."); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1137, 1144 (9th Cir. 2013) (prolonged detention under §§ 1225(b) and 1226(c) without a bond hearing would be "constitutionally doubtful"); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1114 (W.D. Wash. 2019) (collecting Ninth Circuit cases recognizing that prolonged detention without adequate procedural protections would raise "serious constitutional concerns").  In these cases, the Court emphasized that the constitutional concerns arise from the extended duration of detention combined with the absence of opportunity to challenge the government's justifications for continued confinement.  Taken together, these Supreme Court and Ninth Circuit decisions make clear that trial courts must assess on a case-by-case basis whether detention without a bond hearing has exceeded constitutional limits, regardless of whether such detention is mandated by statute.

Contrary to Respondents' assertions, neither Petitioner's purported status as an "arriving alien"[1] nor his detention under § 1225(b) forecloses a due process challenge to the lawfulness of his detention.  *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 140 (2020), the Supreme Court case that the government relies on to make this argument, rejected an asylum seeker's claim that the Due Process Clause entitled him to additional avenues to challenge his expedited removal beyond those provided by statute. *Thuraissigiam* held that (1) the asylum seeker's claim fell outside the scope of habeas

---

[1] While Respondents attempt to categorize Petitioner as an "arriving alien" like the asylum seeker in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 139 (2020), the government's own records refute this characterization. *See* Gov't Opp. at 2:4.  The February 3, 2025 Notice to Appear issued to Petitioner presents three possible classifications for immigration status: (1) "You are an arriving alien"; (2) "You are an alien present in the United States who has not been admitted or paroled"; or (3) "You have been admitted to the United States, but are removable for the reasons stated below."  Dkt. 6-1 at 2. The government checked only the box corresponding to the second option, thereby identifying Petitioner as a noncitizen "present in the United States who has not been admitted or paroled," as opposed to an "arriving alien."  *See id.*

25-cv-02974-JO-MSB

jurisdiction because he sought "the opportunity to remain lawfully in the United States" rather than release from custody; and (2) the asylum seeker was not entitled to additional process beyond what the detention statute affords for contesting removability. *See id.* at 119, 140. This case is different. Here, Petitioner does not invoke due process to challenge the outcome of his removal proceedings or seek additional procedural steps to appeal his removability. Instead, he seeks relief from detention pending the resolution of those proceedings—a request squarely within the traditional scope of habeas jurisdiction. *See Preiser*, 411 U.S. at 484 ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."). Accordingly, consistent with the many district courts that have addressed this issue, this Court concludes that Petitioner may invoke due process challenges to the lawfulness of his prolonged detention without a bond hearing. *See, e.g.*, *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) ("Nowhere in [*Thuraissigiam*] did the Supreme Court suggest that arriving aliens being held under § 1225(b) may be held indefinitely and unreasonably with no due process implications, nor that such aliens have no due process rights whatsoever."); *Sadeqi v. LaRose*, 809 F. Supp. 3d 1090, 1093 (S.D. Cal. 2025) (collecting cases).

The Court, therefore, proceeds to evaluate Petitioner's procedural due process claim—that his prolonged detention without a bond hearing has violated his right to due process—under the balancing framework set forth in *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (noting courts in the Ninth Circuit "have regularly applied *Mathews* to due process challenges to removal proceedings"); *Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (collecting cases applying *Mathews* in this context). Under that framework, courts consider (1) the private interest affected by the government action; (2) the risk of erroneous deprivation of that interest under the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that additional procedures would entail. *See id.* at *6. In cases involving prolonged immigration detention

without a bond hearing, only certain of these factors require individualized analysis. Across the board, the private interest at stake will be the noncitizen's fundamental interest in freedom from physical restraint. *See Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). And where the government has provided no process to determine whether continued detention is justified, the risk of erroneously depriving an "individual's constitutionally protected interest in avoiding physical restraint" is obvious. *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (quoting *Zadvydas*, 533 U.S. at 690, emphasis omitted). The remaining inquiry will, therefore, focus on the extent of the government's intrusion on Petitioner's liberty interest and the government's interest in continuing that detention without a bond hearing.

In determining the magnitude of the government's incursion into Petitioner's individual liberty, the Court examines both the duration of his detention to date and his likely future detention. *Demore*, 538 U.S. at 529–30 (considering the expected duration of confinement in deciding whether certain statutory detentions without a bond hearing exceeded constitutional limits); *see also Banda*, 385 F. Supp. 3d at 1120 (collecting cases evaluating the likely duration of confinement in determining whether detention without a bond hearing violated due process). Here, Petitioner has been detained since December 26, 2024, a period of nearly eleven months as of the filing of his petition. Faizi Decl. ¶ 2. This substantial period of detention—caused largely by administrative delays outside Petitioner's control, including continuances due to docket congestion and case reassignment to a different judge, *see id*. ¶¶ 23–25—is likely to be followed by additional months or years of administrative review before the Board of Immigration Appeals ("BIA") and potential judicial review in the Ninth Circuit.

The government has not demonstrated that its interests in detaining Petitioner without a bond hearing outweigh the risk of wrongfully subjecting an individual to a liberty deprivation of this magnitude. In assessing the government's interest, the Court weighs the regulatory "function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

25-cv-02974-JO-MSB

The government's regulatory interests in civil immigration detention include ensuring a noncitizen's appearance at removal proceedings and protecting the public. *See Zadvydas*, 533 U.S. at 690. Any civil detention must "bear some reasonable relation" to these regulatory purposes. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). Here, it appears that the government neither has a regulatory interest in detaining Petitioner nor faces fiscal and administrative burdens that justify withholding a bond hearing. The record contains no evidence that Petitioner has a criminal history, poses a danger to the community, or presents a flight risk, and the government has not articulated any other individualized justification for his continued detention. Pet. ¶ 45; *see generally* Faizi Decl.; Gov't Opp. Nor has the government argued or provided any evidence regarding the administrative or fiscal burdens that a bond hearing would entail.[2] *See* Gov't Opp. Yet Petitioner has been confined for nearly eleven months as of the time of his petition and may remain detained for months or years longer while his removal proceedings—which have been repeatedly delayed through no fault of his own—continue. Under these circumstances, Petitioner has suffered and will continue to suffer a substantial deprivation of liberty with no opportunity to contest his detention, despite the absence of any legitimate government interest to justify this deprivation.

---

[2] As the Ninth Circuit has acknowledged, the cost to the public of detaining noncitizens is "staggering," *Hernandez*, 872 F.3d at 996—an average of $187.48 per adult detainee per day as of fiscal year 2023. U.S. Immigration and Customs Enforcement, *Fiscal Year 2025 Congressional Justification* 26 (2024), https://www.dhs.gov/sites/default/files/2024-04/2024_0308_us_immigration_and_customs_enforcement.pdf (last visited Apr. 23, 2026). With more than 72,000 individuals in ICE custody nationwide as of January 2026, the aggregate cost of immigration detention amounts to $13.50 million per day, or roughly $4.93 billion annually. *See* U.S. Immigration and Customs Enforcement, *Detention FY 2026 YTD, Alternatives to Detention FY 2026 YTD and Facilities FY 2026 YTD, Footnotes* (2026), https://www.ice.gov/detain/detention-management (ICLOS and detainees tab, total at end of January) (last visited Feb. 16, 2026). By comparison, the cost and burden of providing a bond hearing is "minimal." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). The government has long afforded noncitizens bond hearings pursuant to 8 U.S.C. § 1226(a), and DHS has an established framework for doing so that it can readily apply here. *See Hyppolite v. Noem*, 808 F. Supp. 3d 474, 493 (E.D.N.Y. 2025).

25-cv-02974-JO-MSB

Accordingly, the Court found that Petitioner's detention had become unreasonably prolonged in violation of the Due Process Clause of the Fifth Amendment and ordered an individualized bond hearing before a neutral immigration judge forthwith.  Dkt. 10; *see also Lopez v. Garland*, 631 F. Supp. 3d 870, 882–83 (E.D. Cal. 2022) (collecting cases ordering a bond hearing where a petitioner was subject to prolonged mandatory detention).  To justify any continued detention, the government must carry the burden to "prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings*, 583 U.S. 281; *Gao*, 805 F. Supp. 3d at 1112 (explaining that "the substantial liberty interest at stake" in a prolonged detention case warranted placing the burden on the government at a bond hearing) (citation omitted).

**B.  Scope of Relief**

The Court took under submission the question of whether relief beyond ordering a bond hearing is appropriate in this case.  The habeas statute "command[s] that the judge, after granting the writ and holding a hearing of appropriate scope, 'dispose of the matter as law and justice require.'" *Fay v. Noia*, 372 U.S. 391, 438 (1963) (quoting 28 U.S.C. § 2243).  To ensure an effective remedy for unlawful detention, a habeas court is authorized to utilize the "breadth and flexibility . . . inherent in equitable remedies." *See Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (citation omitted); *see also Boumediene v. Bush*, 553 U.S. 723, 779–80 (2008) (noting that while habeas relief commonly includes release from physical custody, "release need not be the exclusive remedy").

These equitable principles authorize forward-looking relief when necessary to prevent recurrence of unconstitutional detention. *See Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) ("The necessary determination [for granting a permanent injunction] is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.") (citation modified).  Both the Supreme Court and the Ninth Circuit have recognized that habeas relief may include enjoining redetention under the challenged statutory authority. *See Clark v. Martinez*, 543

25-cv-02974-JO-MSB

U.S. 371, 376 n.3 (2005) (noncitizen's petition "continue[d] to present a live case or controversy" because the court could provide relief by enjoining redetention under the same allegedly unlawful basis); *Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2010) (release did not moot petition because injunction against redetention "would place Petitioner in a far different situation from his current one, released pursuant to the government's independent determination but subject to revocation on the government's discretion without [a] hearing"). Consistent with these decisions, courts in the Ninth Circuit have enjoined redetention absent a bond hearing where, as here, the government asserts ongoing statutory authority to reimpose unconstitutional mandatory detention. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (permanently enjoining redetention without a bond hearing); *Perera v. Jennings*, 598 F. Supp. 3d 736, 748 (N.D. Cal. 2022) (same); *Arroyo Silva v. Hermosillo*, No. 2:26-cv-00179-GJL, 2026 WL 445003, at *6 (W.D. Wash. Feb. 17, 2026) (same).

Here, a bond hearing alone does not fully remedy the constitutional violation because Petitioner faces a continuing threat of redetention under the policies of the current executive regime. Since Petitioner's current detention has already exceeded constitutional limits, any further redetention must also be justified by a due process bond hearing. But for the past year, the government has repeatedly invoked § 1225's mandatory detention provision to redetain noncitizens to whom it had previously granted release—unlawfully depriving them of liberty without individualized process.[3] Absent further injunctive relief,

---

[3] The following is a non-exhaustive list of cases in this Court alone in which the government has engaged in this practice: *Armenta Ortiz v. Noem*, No. 3:26-cv-01195-JO-VET, Dkt. 6 (S.D. Cal. Mar. 12, 2026); *Arslan v. Casey*, No. 3:26-cv-01200-JO-MMP, Dkt. 7 (S.D. Cal. Mar. 12, 2026); *Dambaev v. Marrero*, No. 3:26-cv-01182-JO-SBC, Dkt. 6 (S.D. Cal. Mar. 11, 2026); *de Souza Gomes v. Archambeault*, No. 3:26-cv-00317-JO-MSB, Dkt. 10 (S.D. Cal. Feb. 5, 2026); *Esquivel Pacheco v. LaRose*, No. 3:25-cv-2421-JO-AHG, 2026 WL 242300 (S.D. Cal. Jan. 29, 2026); *Fartushin v. LaRose*, No. 3:26-cv-01164-JO-BJW, Dkt. 4 (S.D. Cal. Mar. 10, 2026); *Guerra Pupo v. LaRose*, No. 3:25-cv-03448-JO-VET, Dkt. 9 (S.D. Cal. Dec. 16, 2025); *Hakimi v. LaRose*, No. 3:26-cv-01458-JO-MMP, Dkt. 8 (S.D. Cal. Mar. 25, 2026); *Kalsi v. Casey*, No. 3:26-cv-01861-JO-MMP, Dkt. 6 (S.D. Cal. Apr. 6, 2026); *Lafailaise v. LaRose*, No. 3:26-cv-01184-JO-BLM, Dkt. 5 (S.D. Cal. Mar. 16, 2026); *Lesmes Sanchez v. LaRose*, No. 3:26-cv-01926-JO-MSB, Dkt. 5 (S.D. Cal. Apr. 14, 2026); *Liu v. LaRose*, No. 3:26-cv-01546-JO-MMP, Dkt. 5

Petitioner remains vulnerable to unlawful redetention pursuant to this policy. Accordingly, to give meaningful effect to this Court's ruling and prevent its immediate circumvention, the Court orders that, if Petitioner is released, Respondents shall not redetain him during the pendency of his removal proceedings (until a final order of removal is issued) without first providing a bond hearing as set forth above. *See Hernandez*, 872 F.3d at 983, 990–91 n.18; *Singh*, 638 F.3d at 1203.

## V. CONCLUSION

For the reasons stated above, the Court granted Petitioner's habeas petition [Dkt. 1] and ordered Respondents to provide Petitioner with a bond hearing as set forth above.

The Court took under submission the question of whether further relief was warranted and now ORDERS as follows:

1. If Petitioner is released, Respondents may not redetain him during the pendency of his removal proceedings without first providing an individualized bond hearing before a neutral immigration judge where the government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or such a flight risk that no amount of bond or

---

(S.D. Cal. Apr. 1, 2026); *Manzanares-Zeledon v. Divver*, No. 3:26-cv-01310-JO-VET, Dkt. 6 (S.D. Cal. Mar. 23, 2026); *Mao v. Marrero*, No. 3:26-cv-00816-JO-JLB, Dkt. 13 (S.D. Cal. Feb. 20, 2026); *Mirzaie v. LaRose*, No. 3:25-cv-02568-JO-KSC, Dkt. 28 (S.D. Cal. Jan. 15, 2026); *Olivares Centeno v. Mayorkas*, No. 3:26-cv-00070-JO-BJW, Dkt. 11 (S.D. Cal. Jan. 22, 2026); *Omari v. LaRose*, No. 3:26-cv-01802-JO-MMP, Dkt. 6 (S.D. Cal. Apr. 3, 2026); *Perez-Barrios v. Warden*, No. 3:26-cv-01365-JO-BLM, Dkt. 13 (S.D. Cal. Mar. 25, 2026); *Pierre v. Warden*, No. 3:26-cv-00634-JO-MMP, Dkt. 6 (S.D. Cal. Feb. 18, 2026); *Podskarbi v. Noem*, No. 3:26-cv-01862-JO-AHG, Dkt. 5 (S.D. Cal. Mar. 25, 2026); *Rosas Rodriguez v. LaRose*, No. 3:26-cv-01723-JO-BJW, Dkt. 5 (S.D. Cal. Mar. 27, 2026); *Garcia Saavedra v. LaRose*, No. 3:26-cv-00456-JO-MSB, Dkt. 8 (S.D. Cal. Feb. 10, 2026); *Sandhu v. Casey*, No. 3:26-cv-01848-JO-DDL, Dkt. 8 (S.D. Cal. Apr. 6, 2026); *Shagoian v. LaRose*, No. 3:26-cv-01911-JO-BLM, Dkt. 7 (S.D. Cal. Apr. 14, 2026); *Singh v. Ponce*, No. 3:26-cv-01214-JO-SBC, Dkt. 6 (S.D. Cal. Mar. 19, 2026); *Singh v. Warden*, No. 3:26-cv-01456-JO-MMP, Dkt. 5 (S.D. Cal. Mar. 25, 2026); *Singh v. Warden*, No. 3:26-cv-01787-JO-JLB, Dkt. 8 (S.D. Cal. Apr. 3, 2026); *Singh v. Warden*, No. 3:26-cv-00432-JO-JLB, Dkt. 9 (S.D. Cal. Feb. 10, 2026); *Tejada Henao v. LaRose*, No. 3:26-cv-01202-JO-DDL, Dkt. 7 (S.D. Cal. Mar. 12, 2026); *Virk v. Noem*, No. 3:26-cv-00934-JO-SBC, Dkt. 5 (S.D. Cal. Feb. 24, 2026); *Wang v. Noem*, No. 3:26-cv-00763-JO-DDL, Dkt. 8 (S.D. Cal. Feb. 18, 2026); *Zumaya Macias v. LaRose*, No. 3:26-cv-00911-JO-MMP, Dkt. 6 (S.D. Cal. Feb. 25, 2026).

alternative conditions of release "would suffice to ensure his future appearance." *Hernandez*, 872 F.3d at 983; *see id.* at 990–91 n.18; *see also Singh*, 638 F.3d at 1203. In setting the amount of bond, the immigration judge must consider Petitioner's financial circumstances and alternative conditions of release as set forth in *Hernandez*, 872 F.3d at 990–91. The immigration judge shall not deny bond on the basis that (i) 8 U.S.C. § 1225(b) requires or authorizes mandatory detention; or (ii) BIA precedent deprives the immigration judge of jurisdiction to decide bond. The bond hearing shall be transcribed.

2. Respondents shall file a declaration attesting to full compliance with these obligations **at least 48 hours prior** to any redetention of Petitioner.

**IT IS SO ORDERED**.

Dated:  April 24, 2026

_____
Honorable Jinsook Ohta
United States District Judge

14

25-cv-02974-JO-MSB